UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

S.R.B. (XXX-XX-    CIVIL ACTION NO. 22-cv-5437

VERSUS    JUDGE S. MAURICE HICKS, JR.

COMMISSIONER OF SOCIAL SECURITY    MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

S.R.B. ("Plaintiff") was born in 1974, has a high school education, and has past work experience as a certified nurse assistant ("CNA"). She applied for disability benefits based on congestive heart failure, diabetes, and other ailments that limit her ability to work. ALJ Carolyn Smilie held an evidentiary hearing and issued a written decision and found that Plaintiff was not disabled within the meaning of the Social Security Regulations. The Appeals Council denied a request for review.

Plaintiff filed this civil action to seek judicial review of the Commissioner's decision. She urges two issues: (1) the ALJ did not adequately address her need for breaks during the workday and (2) the ALJ did not properly evaluate certain medical opinion evidence. The undersigned finds that Plaintiff is entitled to relief with respect to her first issue. For the reasons that follow, it is recommended that the Commissioner's decision be reversed and this matter be remanded to the agency for further consideration.

**Standard of Review; Substantial Evidence**

The court reviews the Commissioner's denial of benefits "only to ascertain whether (1) the final decision is supported by substantial evidence, and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." Whitehead v. Colvin, 820 F.3d 776, 779 (5th Cir. 2016). "Substantial evidence is more than a scintilla and less than a preponderance." Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2002). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994).

**Analysis**

The regulations establish a five-step sequential evaluation process to evaluate whether a claimant is disabled. The ALJ considers whether the claimant: (1) is "currently engaged in substantial gainful activity;" (2) has a "severe impairment;" (3) has an impairment that "meets the severity of an impairment enumerated in the relevant regulations;" (4) is unable to perform "past relevant work;" and (5) is unable to perform "any relevant work." Knight v. Kijakazi, 2023 WL 234769 (5th Cir. 2023). If a claimant gets past the first four stages, then the burden shifts to the Commissioner at the fifth step to prove the claimant's employability. Keel v. Saul, 986 F.3d 551, 555 (5th Cir. 2021). If the claimant is found to be disabled or not disabled at a step, then that determination ends the inquiry. Id.

The ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of August 22, 2016 (step one). She next reviewed the medical records and Plaintiff's testimony and concluded at step two that Plaintiff has the following

severe impairments: congestive heart failure, residual effects of cardiac surgery, diabetes mellitus, chronic kidney disease, and obesity. She found at step three that Plaintiff's impairments did not meet or equal in severity a listed impairment that would require a finding of disability without further analysis.

Before proceeding to steps four and five, the ALJ assessed the evidence to determine Plaintiff's residual functional capacity ("RFC"), which is the most the claimant can still do despite her limitations. She found that Plaintiff had the RFC to perform light work as defined in the regulations, but subject to some additional limitations: no climbing of ladders, ropes or scaffolding; only occasional climbing of ramps or stairs; should not perform work that requires operation of foot controls; should not be exposed to work around hazards such as unprotected heights, dangerous mechanical parts, or work that requires operation of a motor vehicle; and should avoid concentrated exposure to vibration, temperature extremes, and pulmonary irritants.

The ALJ looked to testimony from a vocational expert ("VE") with respect to steps four and five. The VE testified that Plaintiff's past work as a CNA was classified at the medium exertional level, so a person with her RFC and other factors would not be able to perform such work. At step five, the VE testified that a person with Plaintiff's RFC, age, education, and work experience could perform the requirements of representative occupations such as an office helper, router, and merchandise marker. Each of those jobs is classified at the light exertional level, and several thousand of each exists in the national economy. The ALJ accepted that testimony and found at step five that Plaintiff was not disabled.

Plaintiff argues on appeal that the ALJ did not adequately address her testimony that she requires frequent breaks to engage in work activity. The VE was asked at the hearing to assume a person with Plaintiff's RFC and other vocational factors who would need to take unscheduled breaks totalling two hours of an eight-hour workday. The VE testified that such a person would not be able to perform any work in the national economy. He explained that a typical job allows one 15-minute break before lunch and one after lunch, but there was no tolerance for additional breaks. Tr. 54-55.

Plaintiff testified at the hearing that she had most recently been working at a residential training school for 40 hours a week, but that included staying overnight. Her work required care of eight boys, ranging in age from 14 to 21. She would cook for them, help them with their grooming and personal care, and spend the night in the home. Plaintiff said that her work shift was 2:30 to 10:30. She was asked if she was moving around the entire time, and she said, "I rest and then I start back doing what I have to do." She said that she could walk only a few feet without having to rest and catch her breath. She said this required her to spend perhaps ten minutes in one room working, then "I'll come out and I'll rest and I'll go back and finish." "I have to rest in between." Plaintiff also testified about an earlier job where she would cook in her own home and deliver the food to others. She said that she could take a break as often as she wanted when performing that job. Tr. 40-51.

The ALJ acknowledged in her decision that Plaintiff testified that she takes her time at work and "takes breaks as needed." She also described Plaintiff's other testimony, such as about her need to alternate sitting and standing due to sciatic pain on her right side. The

ALJ found that the evidence supported an ability to stand, sit, and/or walk up to six hours in a workday. Tr. 19. The ALJ later noted that Plaintiff testified about her work activity at the group home, and she said that this showed "that she is able to perform at least within the restrictions outlined in [the RFC finding]." The ALJ again mentioned that Plaintiff testified that she can perform those job duties "if she takes breaks."

The decision included a finding that the impairments found could reasonably be expected to cause some of the alleged symptoms, but Plaintiff's statements about the intensity, persistence, and limiting effects of the symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." The ALJ also said that the record as a whole established that the impairments caused some limitations, but they were "accommodated by the residual functional capacity, which is consistent with objective findings, the noted opinion evidence, and the claimant's documented activities." Tr. 22. The ALJ also generally acknowledged: "Although the claimant alleges greater limitations than I have assessed, I find that, for the reasons explained above, her allegations are not fully consistent with the overall evidence."

The ALJ's decision addresses the medical evidence in detail and acknowledges all important aspects of Plaintiff's testimony. Plaintiff's testimony about her need for breaks was mentioned more than once. The decision implicitly rejected that testimony, but it did not specifically address the reasons for doing so. [A]n "ALJ is not always required to do an exhaustive point-by-point discussion" of the evidence she reviews. Audler v. Astrue, 501 F.3d 446, 448 (5th Cir. 2007). But she must discuss the uncontroverted evidence she chooses not to rely upon so that the court can perform its role of reviewing the

Commissioner's final decision for support by substantial evidence. See Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1996). The court is unable to conduct a meaningful review where significant and probative evidence is rejected without explanation. Rasball v. Barnhart, 2003 WL 22939244 (D. Kan. 2003). See also Draper v. Barnhart, 425 F.3d 1127, 1130 (8th Cir. 2005) ("unresolved conflicts of evidence can serve as a basis for remand.").

Plaintiff's testimony about her need for breaks was not directly controverted by any of the medical opinions, and the VE's testimony demonstrates the importance of the issue. A similar issue was presented in Dane v. Commissioner, 2021 WL 3513589, *5-6 (E.D. Tex. 2021), where the claimant testified that he would require frequent restroom breaks to accommodate incontinence. The ALJ did not address the implicit rejection of the limitation or explain why it was excluded from the RFC. As in this case, a VE stated that a person with the need for such breaks could not perform alternative jobs. Remand was ordered. Dane cited in support Hooks v. Commissioner, 2014 WL 4348182, *7 (E.D. Tenn. 2014) (where a claimant alleged a need for frequent bathroom breaks and the ALJ offered no analysis of the issue, the court was precluded from engaging in meaningful review so that remand was warranted).

ALJs are required to consider often voluminous medical records and assess related testimony and medical opinions. It is often a daunting task, and time simply does not allow for a detailed discussion of every piece of evidence or relevant factor. The courts understand that, but there are times when the lack of specific discussion about the assessment of certain evidence precludes a court from properly performing its role of reviewing the Commissioner's decision for substantial evidence. The court must avoid

resolving evidentiary conflicts or weighing evidence in the first instance because its role is limited to reviewing such decisions. The ALJ's decision in this case was otherwise detailed and logical, but the omission of a specific discussion of the breaks evidence warrants reversal and remand. On remand, the breaks issue may be explored in more detail and addressed with specificity.

Accordingly,

It is recommended that the Commissioner's decision be reversed pursuant to 42 U.S.C. § 405g (sentence four) and this case be remanded to the agency for further proceedings consistent with this recommendation.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 9th day of February, 2024.

Mark L. Hornsby
U.S. Magistrate Judge